

**Hand Delivered**

September 8, 2010

Suleiman Refaei
9520 West Avenue
Cincinnati, OH 45242

Dear Mr. Refaei:

Please be advised that you are separated from employment with Vantage Oncology (as a Medical Physicist I) effective Wednesday September 8, 2010.

This separation results from the loss of confidence by the affiliated physicians and Vantage Oncology management team with respect to your technical abilities and dissatisfaction with your ability to effectively interact with the team. You fail to engage in appropriate professional conduct such as honesty, positive communications, collaboration, and cooperation in order to foster successful professional relationships with team members. On August 31, 2010, a technical skills evaluation was conducted by Maung Yoe-Sein and Madjid Aissi, in which your technical skills were found to be deficient with respect to:

- Development of technical knowledge and job related competencies (e.g., you lack appropriate 3D & IMRT treatment planning skills);
- Development of analytical skills; and
- Demonstration of appropriate judgment.

These issues are too disruptive to the rest of the team's ability to successfully and appropriately address patient needs. Unfortunately, we are to the point where we collectively believe it is in the best interests of the team and patients for you to be separated from employment at this time.

You have been provided your final paycheck, which includes payment at your current compensation rate for hours worked through September 8, 2010, as well as payout of any accrued but unused vacation time, less legally required withholdings.

If you participated in group health benefits your participation will cease on September 30, 2010 and within 3 weeks after your final day of work our COBRA administrator (Igoe & Company) will notify you regarding your rights for continuation of coverage.

If you have any questions regarding this notice, or if I can be of assistance to you please contact me at (310) 416-8903, or at Maureen.Murphy@vantageoncology.com .

Respectfully,

*Maureen Murphy*

Maureen Murphy
VP of Human Resources



1500 Rosecrans Avenue, Suite 400, Manhattan Beach, CA 90266
HR Tel 888.864.7742   HR Fax 310.335.4083



October 27, 2008

Suleiman A. Refaei
9520 West Avenue
Cincinnati, Ohio 45242
Email: refaeis@yahoo.com

Vantage Oncology, Inc. and affiliates (hereinafter "Vantage") is pleased to extend an offer of employment to you.

| | |
|---|---|
| **Title:** | Medical Physicist I, full-time, salary, exempt. |
| **Start Date:** | November 10th, 2008 |
| **Work Location(s) and Hours:** | Various centers, subject to business need. General office hours are from 8:00a.m. to 5:00p.m., Monday through Friday. The hours and work location(s) are subject to change pursuant to the needs of the business. |
| **Reporting Relationship:** | Madjid Aissi, Ph.D., VP, Medical Physicists |
| **Position Responsibilities:** | You will be responsible for providing medical physics services to the Vantage Oncology Radiation Oncology Centers according to established policies and procedures, working in close collaboration with physicians and radiation therapists, and under (the supervision of the center's Medical Director and Regional Physics Director.) Other duties and responsibilities may be assigned by management as needed. |
| **Compensation:** | Your annual salary will be $85,000.00 payable in (bi-weekly) installments of $3,269.23, less applicable payroll deductions and withholdings permissible under the law. Vantage pays its employees on a bi-weekly payroll schedule. |
| **Bonus Structure:** | In addition, you will be eligible for a performance-based incentive bonus in an amount of up to 10% of your Annual Base Salary. This bonus is determined in accordance with the guidelines set by Vantage's Compensation Committee. Among the factors that will be considered are both your performance and the Company's performance during the fiscal year relative to the goals and objectives set forth. |
| **Employee Benefits:** | As a full-time employee, you will be eligible to participate in group benefits including holiday, vacation and sick time benefits. For details regarding the benefit packages offered at your location please refer to your new hire package. |
| **Continued Education:** | To encourage you to maintain and improve competency in your position and up-to-date knowledge of regulatory standards, you will be allotted a yearly educational allowance for your professional development and continuing education of $1,500 per calendar year. You are expected and encouraged to take advantage of this allowance, in furtherance of which you will be allotted five (5) days of compensated time per calendar year so that you can attend such seminars, trainings, and continuing education programs as are regarded by you and approved by Vantage Oncology to be professionally appropriate and which will be approved by me in advance. Neither unspent allowance, nor unspent compensated time will carry over from one calendar year to the next, or be paid out should your employment terminate. Costs associated with said professional education will be reimbursed upon receipt of proof of successful course completion. |

Page 2 of 2

**Outside/Other Physics Services:**   If, at some future point, you are engaged, or would like to become engaged, whether as an employee or as an independent contractor, in providing Physics services for another entity, group or hospital, you will notify Vantage. Vantage is concerned about conflicts of interest in this regard and requests immediate notification, if and when this situation arises. Vantage reserves the right to exercise the "at will" employment provision if and when a conflict in this regard cannot be resolved. In addition, if such engagement is by an entity, group or hospital to which you provided services during your employment by Vantage, before entering into the engagement, either you or the party engaging you will pay Vantage a placement fee equal to 35% of your then current annual salary, in recognition of the proprietary information, training and methods that Vantage has provided you.

**Company Policies:**   You are required to review the Employee Handbook in its entirety and sign to acknowledge your review and understanding of Vantage's policies and procedures.

**Employment Contingencies:**   Your offer of employment is contingent upon receiving the following completed new hire documentation within three (3) days of your hire date:

- Network/System Terms-of-Use Policy and Acknowledgement.
- No Harassment and Professional Behavior Policy.
- Comprehensive and favorable employment history and references.
- Execution of a Non-Disclosure and Confidentiality Agreement.
- Handbook (Sign Acknowledgement)
- Current State licensing documentation and/or board certification for your specialty if applicable.

**Employment Relationship:**   Your employment with Vantage is defined as "at-will". Both you and Vantage may decide to terminate the employment relationship at any time, for any reason or no reason, with or without cause or prior notice from either you or Vantage.

**Arbitration:**   In the event of any controversy or dispute arising from, or in any way relating to your employment, work, performance, compensation, or termination, to ensure the expeditious and economical disposition of any such matter, it will be submitted to and resolved by final and binding arbitration, based upon a written request by either party to do so. The details of this arbitration process are set forth in the Employee Handbook. If you have any questions, or concerns about that process, please do not hesitate to contact either Human Resources or your Supervisor.

**Expiration of Offer:**   If this offer of employment is not accepted by you on or before three (3) days from date of offer letter, it will be subject to revocation by Vantage.

If you understand and agree to the terms set forth in this offer of employment, please sign both copies where indicated and return one (1) original letter to me. Please retain one (1) original copy of this offer letter for your files.

If you have any questions concerning the contents of this offer of employment, please contact me. We are excited that you are joining our team!

Sincerely,

A. Madjid Aissi, Ph.D.
Vice President, Medical Physics.

I have read the above terms of this offer of employment and I fully understand, accept and agree to them.

_____        _____
Signature                                                                      Date

_____
Print Name



### Vantage Oncology Benefit Year 2010

Dear Benefit Participant:

Pursuant to your recent qualifying life event (QLE), and Vantage policy, your participation in group health benefits will end on the first day of the month following the effective date of your QLE. In example, if your QLE became effective May 20th then your group health benefits will cease on June 1st.

That being said, you are eligible to continue your **Medical, Dental and Vision** coverage through COBRA. You will receive a COBRA notice mailed to your home address from IGOE & Company, Vantage's COBRA Administrator, detailing the coverage cost and election process. Should you choose to elect any/all of your eligible insurance options, your COBRA coverage will take effect as of the first date of your loss of insurance coverage.

**Vantage Oncology's 401(k) Plan** eligibility will not be affected by your change in employment status as long as you remain employed by Vantage Oncology. Should your employment status change and disqualify you from participation in the 401(k) plan, Vantage will provide you with the necessary documents so you may administer your fund distribution.

If you participated in **Vantage's Flexible Spending Account (Healthcare and Dependent/Day Care)**, your right to benefits will be determined in the following manner:

(a) You will remain covered by insurance, but only for the period for which premiums have been paid prior to your termination of benefits.

(b) You will still be able to request reimbursement for qualifying dependent/day care expenses from the balance remaining in your dependent/day care account at the time of termination of employment. However, no further salary redirection contributions will be made on your behalf after you terminate. You must submit claims within 90-days after termination of benefits. For your convenience, an FSA claim form is enclosed herein.

(c) Your participation in the Health Flexible Spending Account will cease, and no further salary redirection contributions will be contributed on your behalf. However, you will be able to submit claims for health care expenses that were incurred before the end of the period for which payments to the Health Flexible Spending Account have already been made. You must submit claims within 90-days after termination. For your convenience, an FSA claim form is enclosed herein.

Also included is information on Lincoln National Life Insurance products offered through Vantage. You may now be eligible to convert your **Group Life Insurance and/or Group Long-Term Disability Insurance** to an individual policy. Moreover, if you were a participant in **Voluntary Life Insurance and/or Voluntary Accidental Death and Dismemberment Insurance** you may wish to continue your voluntary insurance plan(s) by exercising the "portability options" to obtain an individual policy. Should you qualify and have interest in applying for any of the aforementioned Lincoln National insurance plans, please read, complete and submit the corresponding applications as directed on the enclosures. For more information about the portability and the conversion rates of your life insurance policy, please contact Lockton Insurances Services toll free at (888) 354-2848.

If we can be of further assistance, please do not hesitate to contact the Human Resources Department at (888) 864-7742, or at the mailing address noted below.

Thank you.

*Vantage Oncology Human Resources*

**VTG**

## VANTAGE ONCOLOGY

# FLEXIBLE SPENDING ARRANGEMENT CLAIM FORM
### FOR PLAN YEAR JANUARY 1, 2010 *through* DECEMBER 31, 2010
### AND GRACE PERIOD *through* MARCH 15, 2011

**Section I – Employee Information**

| | |
|---|---|
| Last Name, First Name                    MI | Day Phone | Employee SSN |
| Address                          City        St      Zip | Email* SEE INFORMATION BELOW |

☐ **Address Change**

**Instructions**

1. Complete Section I – Employee Information. This form can only be used for services incurred during the plan year shown above. <u>Do not use this form for Benny™ Card transactions.</u>

2. Do not staple any documentation to claim form, please tape to separate sheet or include loosely in envelope. Do not send originals (all claims are stored electronically and paper copies will be shredded).

3. Complete Section II – Day Care Claims. Attach proper third-party documentation showing the date(s) of service, cost of service, dependent's name, and provider's name and tax ID or social security number (No cancelled checks, balance forwards, or bank card receipts).

4. Complete Section III – Health Care Claims. Attach proper third-party documentation showing the date(s) of service, type(s) of service and cost (No cancelled checks, balance forwards, or bank card receipts). Itemize all expenses to prevent delays in reimbursement.

5. Complete Section IV – Signing the claim form. Fax or mail a signed claim form, but do not do both. Online claims status is available at www.flex-plan.com. Claims must be submitted at least two (2) full business days prior to the scheduled reimbursement date.

**Section II – Day Care FSA**

| Start Date | End Date | Provider's Name, Tax ID/or SSN | Name of Dependent | Age | Cost |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| See IRC Section 129 for qualifying Day Care expenses or consult your tax advisor for more information. | | | **Total Day Care FSA Request** | | $ |

**THE LIMITED HEALTH CARE FSA WILL ONLY REIMBURSE DENTAL AND VISION EXPENSES. ANY OTHER TYPE OF MEDICAL EXPENSE CANNOT BE REIMBURSED THROUGH THE LIMITED HEALTH CARE FSA.**

**Section III – Health Care FSA**

| Service Dates | Type of Service | Name of Provider | For Whom | Net Cost |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| See IRC Section 213 for qualifying Health Care expenses or consult a tax advisor for more information. | | | **Total Health Care FSA Request** | $ |

**Section IV – Signature**

To the best of my knowledge my statements on this claim form are complete and true. I understand that I am solely responsible for the sufficiency, accuracy, and veracity of claims and all information related to these claims submitted to my Health Care ("HCFSA") or Day Care Flexible Spending Arrangement ("DCFSA"), and that unless an expense for which payment or reimbursement is claimed is a proper expense under the HCFSA or DCFSA, I may be liable for the payment of all related taxes including federal, state or city income tax on amounts paid from the HCFSA or DCFSA which relate to such expense. I further understand that no day care tax credit is permitted for amounts for which reimbursement is made. I am claiming health care reimbursement for eligible medical care expenses incurred by myself, spouse, and/or dependents during the plan year shown above and certify that these expenses have not been reimbursed under this plan or by any other source and that they will not be reimbursed by any other source or insurance. *By providing an email address, I consent to receive all possible communications regarding the Plan via email. I may withdraw consent at anytime without charge by contacting Flex-Plan by phone, email, or mail. To update your email address contact Flex-Plan by phone, email, or mail. You have the right to receive paper version of an electronic document free of charge. Software requirements will be provided with each electronic document. I hereby authorize my HCFSA and/or DCFSA to be reduced by the amount(s) shown above.

| Participant's Signature X | Date |
|---|---|

**Fax completed form and documentation to:**
FAX: (425) 451-7002 or toll-free (866) 535-9227

**Email:**
claims@flex-plan.com

**Mail forms and documentation to:** Flex-Plan Services, Inc.
PO Box 53250 Bellevue, WA 98015-3250

Customer Service Line: (425) 452-3500 or (800) 669-FLEX Visit our Web site at www.flex-plan.com

REV 11/28/2009

**PARTICIPANT PAYOUT REQUEST FORM**

**Plan Name:**   Vantage Oncology, Inc. 401(k) Plan

**Plan Number:**   82324

**Participant's Social
Security Number:** _____ - _____ - _____

**Plan Participant Instructions**

Please complete this form and return it to the Plan Administrator of the company sponsoring this plan.  If you have any questions, please contact a Fidelity Representative at 800-294-4015.

**Participant Information**

Participant Name: _____

Last                                              First                                          Middle Initial

Participant Address: _____

Street

_____

City                                              State                                          Zip

Marital Status:    ☐ Single    ☐ Married

Reason for Payout:*(Select one)*    ☐ Disability    ☐ Retirement    ☐ Termination of employment from the Employer*

* You are generally not considered to have terminated your employment from your Employer if you are working for a Related Employer.

**Form of Payment**

You should review the Participant Distribution Notice and consult with your tax advisor before completing this form to determine all of the income tax consequences to you for any election you make.  Select the form of payment in which you want to receive your vested Account balance from the Plan.

Please note: The Participant Distribution Notice has not yet been updated by the IRS to include information about distributions from a designated Roth account in the Plan. Additionally, the distribution options described here for designated Roth accounts may change in the future as the IRS issues final guidance on Roth 401(k) plan distributions.

1.   ☐   <u>Lump Sum Distribution</u> - This distribution will be paid directly to you.
       Twenty percent (20%) Federal Income Tax will automatically be withheld from the taxable portion of your distribution.  (This mandatory withholding will not apply to taxable distributions under $200, distributions of after-tax Employee Contributions, or any amounts which are not eligible for rollover.)

2.   ☐   <u>Eligible Rollover Distribution</u> - This is a distribution <u>directly</u> to one of the following:

      a.   ☐   <u>Fidelity Advisor – Rollover IRA &/or Roth Rollover IRA</u>
              (If this is a new Fidelity Advisor Rollover IRA and/or Roth Rollover IRA, complete a Fidelity Advisor Rollover IRA Application and/or Roth Rollover IRA and return as instructed.  If this is an existing Fidelity Advisor Rollover IRA and/or Roth Rollover IRA, please indicate your account number (s):_____ and account type (either Rollover IRA or Roth Rollover IRA) _____.)  Roth IRA account types should only be selected if you have money in your Roth Deferral or Roth Rollover contribution sources of your account.

      b.   ☐   <u>Other Traditional Individual Retirement Account</u> (A traditional IRA does not include a SIMPLE IRA)
              (Complete the Eligible Rollover Distribution Information Section of this application).

      c.   ☐   <u>New Employer's Eligible Retirement Plan</u> (i.e. a qualified 401(a) plan, 403 (a) annuity plan, a 403(b) tax-sheltered annuity or governmental 457(b) plan)
              (Complete the Eligible Rollover Distribution Information Section of this application).

3.   ☐   Combination:  Lump Sum and Eligible Rollover Distribution

      <u>Lump Sum Distribution</u> _____%

417900 *(Day to Day Activities)*

2/26/2007

<u>Eligible Rollover Distribution</u> - This will be a direct rollover of the remaining amount of the distribution to one of the following:

a. ☐ <u>Fidelity Advisor Rollover IRA & Roth Rollover IRA</u>
(If this is a new Fidelity Advisor Rollover IRA and/or Roth Rollover IRA, complete a Fidelity Advisor Rollover IRA Application and/or Roth Rollover IRA and return as instructed.  If this is an existing Fidelity Advisor Rollover IRA and/or Roth Rollover IRA, please indicate your account number(s):_____ and account type (either Rollover IRA or Roth Rollover IRA) _____.) Roth IRA account types should only be selected if you have money in your Roth Deferral or Roth Rollover contribution sources of your account.

b. ☐ <u>Other Individual Retirement Account</u> (A traditional IRA does not include a SIMPLE IRA)
(Complete the Eligible Rollover Distribution Information Section of this application).

4. ☐ <u>Installments Over A Period of Time</u> - Complete the information below.
Federal Income Tax withholding will apply.  Under certain situations, you may elect no withholding on IRS Form W-4P.

   a. Date of First Payment: _____

   b. The term of the installments shall be based on:

      i. ☐ My life expectancy* Number of years _____

      ii. ☐ My life expectancy* and my spouse or Beneficiary's life expectancy* Number of years _____

      iii. ☐ $_____ per installment

   c. Frequency of installments in option b. _____

\* The life expectancy as determined in IRS Regulations and as specified on the applicable IRS life expectancy table.  Life expectancy values must be provided by the participant to Fidelity.

5. ☐ Qualified Joint and 50% Survivor Annuity. Please contact the Plan Administrator for further information.
(**Note:** This option is only available if you are married.)

6. ☐ Combination of Lump Sum and Installments . Please contact the Plan Administrator for further information.

## Income Tax Withholding

Fidelity will withhold 20 percent of taxable eligible rollover amounts that are not rolled directly into an IRA or another eligible retirement plan.  You cannot elect out of this withholding.  Taxable amounts that are not eligible for rollover are subject to federal income tax withholding at rates required by law (and in certain circumstances state income tax withholding) unless you attach a completed IRS Form W-4P with this form to elect additional withholding or to elect no withholding. Fidelity will withhold State Income Tax as required if Federal Income Tax is also being withheld, unless you elect out of withholding below.  (This only applies to the states that require withholding.  Please check with the Plan Administrator.)  Please specify the state of your primary residence:
_____.

   a. ☐ I do <u>not</u> want State Income Tax to be withheld from my distribution.

Whether or not taxes are withheld, you are still responsible for the full payment of federal income tax, any state or local taxes, and penalties which may apply to your distribution(s).  You may be responsible for payment of estimated taxes and may incur penalties under IRS rules if your estimated tax payments are not sufficient.

## Eligible Rollover Distribution Information

Complete this section if under the Form of Payment Section.

If you request an eligible rollover distribution, a check(s) will be mailed directly to you as the Participant and issued payable to the custodian or trustee based upon the information listed below.  However, if you request a distribution to an IRA at Fidelity, the funds

will be deposited directly into the account you have established and you will receive a confirmation by mail from Fidelity. The check stub will also contain the notation "direct rollover." (Note: A qualified 401(a) plan, a 403(a) annuity plan, a 403(b) tax-sheltered annuity or an eligible governmental 457(b) plan may refuse to accept an eligible rollover distribution. Please check with your new employer to determine if its plan will accept your eligible rollover distribution).

Custodian/Trustee Name _____

Plan Name (if applicable) _____

Account Number(s) _____

Account Type(s) _____

## Signatures

I acknowledge that I have received and read the Participant Distribution Notice, provided by the Plan Administrator, which includes the Special Tax Notice Regarding Plan Payments. I affirmatively elect the payment option(s) in the Form of Payment section of this form and waive the unexpired portion of the minimum thirty-day notice period during which I may consent to a withdrawal from the Plan. I hereby certify that the information on this form is true, accurate and complete.

*PARTICIPANT* _____ *DATE* _____

**Please note:** If you are rolling over to a Fidelity Advisor IRA, the assets in your company's retirement savings plans will not transfer until this form has been processed and a Fidelity Advisor IRA account has been established. If you have any questions, please contact a Fidelity representative at 800-294-4015.

As Plan Administrator I authorize the Participant's payout distribution. If the Participant elects under the Form of Payment Section, then I certify that I have obtained adequate information from the Participant (as indicated in the Eligible Rollover Distribution Information Section) and that the eligible rollover distribution is being distributed to either an eligible retirement plan or a traditional IRA.

Since the normal form of benefit under this plan is a qualified joint and survivor annuity, I certify that I have obtained the appropriate spousal consent for this distribution.

*PLAN ADMINISTRATOR*
*PRINT NAME* * _____

*PLAN ADMINISTRATOR*
SIGNATURE _____ *DATE* _____

**\* Note:** The Plan Administrator should both print and sign their name in the spaces given.

For Plan Administrator Use Only

Date of Hire: _____ Vesting Percentage: _____ Termination Date: _____

11/98

# WAIVER OF THE SINGLE LIFE OR JOINT AND SURVIVOR ANNUITY

**Plan Name:**   Vantage Oncology, Inc. 401(k) Plan            **Plan Number:**   82324

**Participant's Social Security Number**   _____ - ____ - _____

---

### Participant Waiver of the Single Life or Joint and Survivor

Participant Name: _____
                        Last                              First                    Middle Initial

This waiver relates to the form of distribution I elected on the following form that I completed:

        a. ☐  Participant Payout Request Form

        b. ☐  In-Service Withdrawal Request Form

        c. ☐  Hardship Withdrawal Request Form

        d. ☐  Minimum Required Distribution Payout Request Form

I elect to waive my right to receive payment of my vested Account balance in the form of a single or qualified joint and survivor annuity. The Plan Administrator has furnished me an explanation of the terms of the single life or joint and survivor annuity, my right to make this waiver election, the time period during which I may make or revoke this election, and the financial effect of my election not to have my benefits paid in the qualified single or joint and survivor annuity form.

I have executed this waiver election this _____ day of _____, _____.

_____
Participant's Signature

**Note:**  The remainder of this form only applies to a Participant who is married.

---

### Consent of Spouse

I, _____, spouse of the Participant hereby consent to the waiver of the qualified joint and survivor annuity elected on this form based on the form of distribution my spouse elected on the attached form that he/she completed. I certify that I have received a joint and survivor annuity notice from the Plan Administrator and I understand the terms of the qualified joint and survivor annuity, my right not to consent to this waiver election, the waiver election period, and the financial effect of the election not to receive benefits in the qualified joint and survivor annuity form. I understand my consent is irrevocable unless my spouse revokes the waiver election. I understand any change in this form of benefit election to another form of annuity payment is subject to my consent, unless my spouse elects to receive the qualified joint and survivor annuity.

I have executed this consent this _____ day of _____, _____.

_____
Signature of Participant's Spouse
(Must be witnessed by a Plan Representative or a Notary Public)

385358 *(General Information)* - No J & S                                      4/22/2008

11/98

**Plan Representative**

Signature of spouse witnessed this _____ day of _____, _____, in the presence of:

Plan Representative

_____
(Print Name)

OR

**Notary Public**

STATE OF _____

(ss.)

COUNTY OF _____

On this _____ day of _____, _____ before me appeared _____ who acknowledged herself or himself to be the person who executed the consent set forth above and acknowledged the consent to be his or her free act and deed.

_____
Notary Public

My commission expires: _____

**Plan Administrator**

As Plan Administrator I hereby acknowledge receipt of this form.

*PLAN ADMINISTRATOR* _____  *DATE* _____

**Note:** The Plan Administrator will maintain possession of this form.

385358 *(General Information)* - No J & S

4/22/2008

# Participant Distribution Notice

**Plan Name: Vantage Oncology, Inc. 401(k) Plan**
**Plan Number: 82324**
**Date Generated: April 19, 2007**

The Vantage Oncology, Inc. 401(k) Plan (the "Plan") is required to provide you with information that explains your distribution options and federal income tax implications prior to receiving assets from your account. As a participant in the Plan you must receive these notices at least thirty (30) days prior to your distribution, and you must receive a new notice if you have received the notice more than one hundred eighty (180) days prior to taking a distribution. You can waive the thirty-day period and take a distribution immediately after receiving the notices. You will be considered to have waived the remaining unexpired period if you elect a form of payment before the end of the 30-day period. The value of your account balance will continue to increase or decrease until fully distributed or forfeited, as appropriate, based on the investment performance.

If your primary form of distribution under the Plan is a Qualified Joint and Survivor Annuity, then you will need to review the Qualified Joint and Survivor Annuity Notice and complete a waiver before electing any other form of distribution.  To determine your primary form of distribution, review the "Distribution Options" section of this notice.

You may elect to have your vested account balance paid directly to you or to the custodian or trustee of another eligible retirement plan.  Please note that when you take a Plan distribution, the taxable portion of the distributed amount will be included in your taxable income (unless you roll the distribution over) and will no longer be invested in the investment options available under the Plan. The enclosed Special Tax Notice Regarding Plan Payments explains the federal income tax implications of distributions that are eligible for rollover and the types of retirement plans able to receive such distributions.

Information appearing in these notices may not be appropriate and/or applicable for individuals not residing in the United States.

You should consult with your tax advisor to determine the financial impact of each form of distribution before you make an election.

If your vested account balance exceeds $5,000, you may defer receipt of your distribution.   You can elect to receive a distribution at any time, provided that you have not been re-employed by the Plan sponsor or any related employer. In any event, you will be required to receive minimum required distribution payments from the Plan no later than the calendar year following the year you attain age 70½ (if you are no longer employed by the Plan sponsor or any related employer).

## Distribution Option(s)

The following distribution options are currently available under the Plan:

### Lump Sum Distribution

If you elect this option, your entire vested account balance will be paid to you in a single distribution. No other benefits will be available to you, your designated beneficiary(ies), or any other person after this distribution.

### Cash Installment Payments

This is an optional form of distribution under the Plan.

If you elect this option your vested account balance will be paid to you in annual or more frequent installments over a period that does not extend beyond your life expectancy; you and your spouse's life expectancy, or your beneficiary's life expectancy. The amount of the distribution is calculated by taking your remaining account balance and dividing it by the number of remaining installments. Due to market change the distribution amounts may be different for each installment period. If you die before your entire vested account balance under the Plan has been distributed, the unpaid vested balance will be paid to your designated beneficiary(ies). In the future, you may also request a lump sum distribution of the remaining amount in your account by requesting a distribution.

### Annuities

Qualified Joint and 50% Survivor Annuity

This is the primary form of distribution under the Plan.

## Participant Distribution Notice

**Plan Name: Vantage Oncology, Inc. 401(k) Plan**
**Plan Number: 82324**
**Date Generated: April 19, 2007**

The percentage indicated above ("survivor percentage") would be paid at death to a surviving spouse under a Qualified Joint and Survivor Annuity.

If you are single, you will receive your vested Account balance from the Plan in the form of a single life annuity, unless you elect another available form of distribution and waive the single life annuity. A life annuity pays you a fixed periodic payment for your life. There is not a benefit payable after your death. If you are married when your distribution begins, you will receive your vested Account balance in the form of a joint and survivor annuity unless you and your spouse elect another form of payment and waive the qualified joint and survivor annuity.  This qualified joint and survivor annuity would include a periodic payment made to you for your life. If you predecease your spouse while receiving this qualified joint and survivor annuity, your surviving spouse will receive a payment for his or her life in an amount equal to the survivor percentage (indicated above) of the periodic amount paid to you.

**Other Non-Annuity**

This is an optional form of distribution under the Plan.

Combination of Lump Sum and Installments

Please refer to the Plan Document, Summary Plan Description and/or Summary of Material Modifications for additional information regarding form and timing of payment.

451098.1

# Qualified Joint and Survivor Annuity Notice

**Plan Name: Vantage Oncology, Inc. 401(k) Plan**
**Plan Number: 82324**
**Name: Joseph Sample**
**Your Vested Account Balance: $20,000.00**
**Date Generated: April 19, 2007**

*The value of your vested account balance shown is as of the market close of the prior business day and will continue to increase or decrease until fully distributed from the Plan or forfeited, as appropriate, based on the investment performance.*

---

### Background:

The purpose of this notice is to provide you and your spouse, if you are married, information regarding the election of an annuity form of payment and optional forms of benefit under the Plan as well as information regarding the relative value for the available forms of benefit under the Plan.   As the term is used below, the "Annuity Starting Date" is the first day of the first period for which an amount is payable as an annuity or in any other form of payment.  A Qualified Joint And Survivor Annuity includes a level monthly payment for your lifetime and a survivor benefit for your spouse after your death equal to the percentage designated of that monthly payment.   A single life annuity would be paid to you as a level monthly payment for your lifetime with no payments to be made to your spouse or any other beneficiary after your death.

Your Employer's plan requires that, unless you elect an optional form of payment, you must receive your plan benefit in the form of an annuity. You will receive a single life annuity if you are not married as of the Annuity Starting Date, or a Qualified Joint And Survivor Annuity if you are married as of the Annuity Starting Date.

### Election of Payment Form:

If you will be receiving an annuity form of distribution, then you will need to complete appropriate forms and return them to the Plan Administrator.  If a Qualified Joint And Survivor Annuity is the primary form of distribution for you then you will be required to make an election pursuant to the Waiver Procedure described below before being allowed to receive a distribution other than a Qualified Joint And Survivor Annuity.

### Waiver Procedure:

If you've elected a form of distribution other than a Qualified Joint And Survivor Annuity, then you must also complete the waiver of the Single Life or Joint and Survivor Annuity form. If you are married, the waiver is not valid unless your spouse consents in writing.  A Notary Public or Plan Representative must witness your spouse's signature on the waiver form. Your waiver election is not valid unless you make it within the 180-day period ending on your distribution date. You have the right to revoke your election until the later of the Annuity Starting Date or seven days after you receive this notice. This notice must be provided to you at least 30 days prior to the end of the election period. You may make a new waiver election following a revocation, as often as you wish before your Annuity Starting Date. If you are married you may revoke a waiver election without your spouse's consent, but your spouse will have to consent in writing to a new waiver election.

### Contact  Information About An Annuity:

To request specific information related to the purchase of an annuity, please contact your Plan Administrator.

### Vested Account Balance and Your Annuity:

Your entire Vested Account Balance is subject to the annuity requirements as described.

# Qualified Joint and Survivor Annuity Notice

**Plan Name: Vantage Oncology, Inc. 401(k) Plan**
**Plan Number: 82324**
**Name: Joseph Sample**
**Your Vested Account Balance: $20,000.00**
**Date Generated: April 19, 2007**

*The value of your vested account balance shown is as of the market close of the prior business day and will continue to increase or decrease until fully distributed from the Plan or forfeited, as appropriate, based on the investment performance.*

---

<u>Generic Example of the Relative Value of Annuity Compared to Other Plan Benefits:</u>

The information below is intended to provide you with a generic representation of an annuity. If you elect to purchase an annuity, the annuity provider for the Plan will calculate your actual payment based on your age, the rate of return, and the type of annuity you are purchasing. <u>The information below is only to be used as an example of how an annuity compares to the plan's other forms of distribution.</u>

The actual level monthly payments made under the annuity contract will depend on the annuity purchase rates used by the annuity provider, your age and your spouse's age (if you are married) at the time the distribution begins, and the amount of your vested Account balance at the time the Trustee purchases the contract.

Table one provides a hypothetical example of the amount of the financial effect of an annuity distribution at various ages. The table is separated into qualified joint and survivor and single life annuity information. The table reflects the amount of the monthly payment based on a $1,000 vested account balance to purchase an annuity.

<u>TABLE 1. Sample Annuity Payment Table</u>

**Monthly Payment Table per $1,000 of Vested Account Balance[1]**

| Qualified Joint and Survivor Annuity | | | Single Life Annuity | |
|---|---|---|---|---|
| Participant's Age | Spouse's Age | Monthly Payment | Participant Age | Monthly Payment |
| 50 | 45 | $5.11 | 50 | $5.41 |
| 50 | 50 | $5.17 | 52 | $5.56 |
| 50 | 55 | $5.23 | 54 | $5.73 |
| 55 | 50 | $5.42 | 55 | $5.82 |
| 55 | 55 | $5.50 | 57 | $6.03 |
| 55 | 60 | $5.58 | 59 | $6.26 |
| 60 | 55 | $5.83 | 60 | $6.39 |
| 60 | 60 | $5.96 | 61 | $6.53 |
| 60 | 65 | $6.07 | 62 | $6.67 |
| 65 | 60 | $6.40 | 63 | $6.83 |
| 65 | 65 | $6.58 | 64 | $6.99 |
| 65 | 70 | $6.74 | 65 | $7.17 |
| 70 | 65 | $7.18 | 66 | $7.35 |
| 70 | 70 | $7.44 | 68 | $7.76 |
| 70 | 75 | $7.68 | 70 | $8.22 |

# Qualified Joint and Survivor Annuity Notice

**Plan Name: Vantage Oncology, Inc. 401(k) Plan**
**Plan Number: 82324**
**Name: Joseph Sample**
**Your Vested Account Balance: $20,000.00**
**Date Generated: April 19, 2007**

*The value of your vested account balance shown is as of the market close of the prior business day and will continue to increase or decrease until fully distributed from the Plan or forfeited, as appropriate, based on the investment performance.*

---

TABLE 2. Comparison of Financial Effect of Forms of Distribution

Table two provides examples of the financial difference between an annuity and the Plan's other forms of distribution based on a hypothetical $1,000 vested account balance used to purchase an annuity. The information below is only to be used as an example of how an annuity compares to the plan's other forms of distribution.

Participant Age 55 (if applicable Spouse Age 55) Commencement[1]

| Form of Distribution | Benefit and Frequency of Payment | Survivor Benefit |
|---|---|---|
| Lump Sum[2] | $1,000 | None |
| Cash Installment Payments | $Variable[3] | $Variable[3] |
| Single Life Annuity | $5.82 per month | Reduced to zero |
| QJSA (Joint and 50% survivor annuity) | $5.50 per month | Reduced to $2.75 per month |

Participant Age 60 (if applicable Spouse Age 60) Commencement[1]

| Form of Distribution | Benefit and Frequency of Payment | Survivor Benefit |
|---|---|---|
| Lump Sum[2] | $1,000 | None |
| Cash Installment Payments | $Variable[3] | $Variable[3] |
| Single Life Annuity | $6.39 per month | Reduced to zero |
| QJSA (Joint and 50% survivor annuity) | $5.96 per month | Reduced to $2.98 per month |

# Qualified Joint and Survivor Annuity Notice

**Plan Name: Vantage Oncology, Inc. 401(k) Plan**
**Plan Number: 82324**
**Name: Joseph Sample**
**Your Vested Account Balance: $20,000.00**
**Date Generated: April 19, 2007**

*The value of your vested account balance shown is as of the market close of the prior business day and will continue to increase or decrease until fully distributed from the Plan or forfeited, as appropriate, based on the investment performance.*

---

Participant Age 65 (if applicable Spouse Age 65) Commencement[1]

| Form of Distribution | Benefit and Frequency of Payment | Survivor Benefit |
|---|---|---|
| Lump Sum[2] | $1,000 | None |
| Cash Installment Payments | $Variable[3] | $Variable[3] |
| Single Life Annuity | $7.17 per month | Reduced to zero |
| QJSA (Joint and 50% survivor annuity) | $6.58 per month | Reduced to $3.29 per month |

Footnotes for Tables:

[1]The monthly payments in the above table are based on the 94 Group Annuity Reserving Mortality Table projected, using scale AA, to 2002 assuming an interest rate of 5.17%, the 30-Year Treasury Weighted Average as of May 2004. Commencement means your age when you request and receive your initial benefit payment.

[2]Lump Sum includes all available distributions from your vested Account balance at one time, including lump sum, direct rollover,, Other Non-Annuity and a combination of a distribution and a direct rollover. This type of distribution immediately reduces your vested Account balance to zero. There is no benefit remaining after the distribution commences which could be paid to your surviving spouse (if you are married), upon your death so the change in the value column does not apply.

[3]Cash installment payments for the Plan are determined on a declining balance method or other method available under the Plan document and based on your election of the number of years that your vested Account balance will be paid to you. For example, if you are 60 years old and elect annual installments over a 10-year period your first year's distribution would be 1/10th of your vested Account balance, your second year's distribution would be 1/9th of your remaining vested Account balance, etc. The remaining balance at the death of the participant will be distributed to the beneficiary(-ies) according to the terms of the plan. This amount cannot be determined in this notice.

451098.1

## SPECIAL TAX NOTICE REGARDING PLAN PAYMENTS

This notice explains how you can continue to defer federal income tax on your retirement savings in the Vantage Oncology, Inc. 401(k) Plan and contains important information you will need before you decide how to receive your Plan benefits. All references to a "section" are references to sections of the U.S. Internal Revenue Code (title 26 of the United States Code).

This notice is provided to you at the request of the Plan Administrator because all or part of the payment that you will soon receive from the Plan may be eligible for rollover by you or your Plan Administrator to a traditional IRA, a Roth IRA or an eligible employer plan. A rollover is a payment by you or the Plan Administrator of all or part of your benefit to another plan or IRA that allows you to continue to postpone taxation of that benefit until it is paid to you. If you have made designated Roth contributions to the Plan, you may rollover your designated Roth account to a Roth IRA or, via a direct rollover, to an eligible employer plan that accepts Roth rollovers; otherwise, your payment cannot be rolled over to a Roth IRA (prior to January 1, 2008), a SIMPLE IRA, or a Coverdell Education Savings Account (formerly known as an education IRA). An "eligible employer plan" includes a plan qualified under section 401(a), including a 401(k) plan, profit-sharing plan, defined benefit plan, stock bonus plan, and money purchase plan; a section 403(a) annuity plan; a section 403(b) tax-sheltered annuity; and an eligible section 457(b) plan maintained by a governmental employer (governmental 457 plan).

An eligible employer plan is not legally required to accept a rollover. Before you decide to roll over your payment to another employer plan, you should find out whether the plan accepts rollovers and, if so, the types of distributions it accepts as a rollover. You should also find out about any documents that are required to be completed before the receiving plan will accept a rollover. Even if a plan accepts rollovers, it might not accept rollovers of certain types of distributions, such as after-tax amounts or designated Roth contributions and any earnings thereon. If this is the case, and your distribution includes after-tax amounts, you may wish instead to roll your distribution over to a traditional IRA or split your rollover amount between the employer plan in which you will participate and a traditional IRA. If your distribution includes designated Roth contributions, you may wish to roll the portion of the distribution that came from a designated Roth account into a Roth IRA. If an employer plan accepts your rollover, the plan may restrict subsequent distributions of the rollover amount or may require your spouse's consent for any subsequent distribution. A subsequent distribution from the plan that accepts your rollover may also be subject to different tax treatment than distributions from this Plan. Check with the administrator of the plan that is to receive your rollover prior to making the rollover.

If you have additional questions after reading this notice, you can contact your Plan Administrator.

### SUMMARY

There are two ways you may be able to receive a Plan payment that is eligible for rollover:

> (1) Certain payments can be made directly to a traditional IRA and/or Roth IRA that you establish or to an eligible employer plan that will accept it and hold it for your benefit ("DIRECT ROLLOVER"); or

> (2) The payment can be PAID TO YOU.

If you choose a DIRECT ROLLOVER:

- Your payment will not be taxed in the current year and no income tax will be withheld.

- You choose whether your payment will be made directly to your IRA or to an eligible employer plan that accepts your rollover. Your payment cannot be rolled over to a SIMPLE IRA or a Coverdell Education Savings Account.

- The taxable portion of your payment will be taxed later when you take it out of the IRA or the eligible employer plan. Depending on the type of plan, the later distribution may be subject to different tax treatment than it would be if you received a taxable distribution from this Plan. If you roll over a payment from your designated Roth account to either a Roth IRA, or an eligible employer plan, you may be able to take a tax free distribution provided certain requirements are met.

If you choose to have a Plan payment that is eligible for rollover PAID TO YOU:

- You will receive only 80% of the taxable amount of the payment, because the Plan Administrator is required to withhold 20% of that amount and send it to the IRS as income tax withholding to be credited against your taxes.

- The taxable amount of your payment will be taxed in the current year unless you roll it over. Under limited circumstances, you may be able to use special tax rules that could reduce the tax you owe. However, if you receive the payment before age 59½, you may have to pay an additional 10% tax.

- You can roll over all or part of the payment by paying it to your IRA or to an eligible employer plan that accepts your rollover within 60 days after you receive the payment. The amount rolled over will not be taxed until you take it out of the IRA or the eligible employer plan; however, see the description below regarding the taxation of Qualified Distributions from a designated Roth account.

- If you want to roll over 100% of the payment to an IRA or an eligible employer plan, you must find other money to replace the 20% of the taxable portion that was withheld. If you roll over only the 80% that you received, you will be taxed on the 20% that was withheld and that is not rolled over.

Your Right to Waive the 30-Day Notice Period. Generally, neither a direct rollover nor a payment can be made from the plan until at least 30 days after your receipt of this notice. Thus, after receiving this notice, you have at least 30 days to consider whether or not to have your withdrawal directly rolled over. If you do not wish to wait until this 30-day notice period ends before your election is processed, you may waive the notice period by making an affirmative election indicating whether or not you wish to make a direct rollover. Your withdrawal will then be processed in accordance with your election as soon as practical after it is received by the Plan Administrator.

## MORE INFORMATION

### I. <u>PAYMENTS THAT CAN AND CANNOT BE ROLLED OVER</u>

### II. <u>DIRECT ROLLOVER</u>

### III. <u>PAYMENT PAID TO YOU</u>

### IV. <u>SURVIVING SPOUSES, ALTERNATE PAYEES AND OTHER BENEFICIARIES</u>

### I. <u>PAYMENTS THAT CAN AND CANNOT BE ROLLED OVER</u>

Payments from the Plan may be "eligible rollover distributions." This means that the opportunity exists to rollover certain payments to a traditional IRA, Roth IRA, or to an eligible employer plan that accepts rollovers. Payments from a plan may not be rolled over to a SIMPLE IRA, or a Coverdell Education Savings Account. Before January 1, 2008, only amounts attributable to a designated Roth account are eligible for rollover to a Roth IRA. Your Plan Administrator should be able to tell you what portion of your payment is an eligible rollover distribution.

Designated Roth accounts. If you have made designated Roth contributions to the Plan, these contributions and their earnings ("designated Roth account") may be rolled over to a Roth IRA or rolled directly to an eligible employer plan that accepts such rollovers.

The following rules apply:

a) Rollover into a Roth IRA. You can roll over your designated Roth account either directly or indirectly to a Roth IRA. If you roll over your designated Roth account to a Roth IRA, the 5-taxable-year period for that designated Roth account will not carryover to the Roth IRA. Once you rollover your designated Roth account to a Roth IRA, those amounts CANNOT later be rolled over to an employer plan. If you rollover your designated Roth account to a Roth IRA, it is your responsibility to track and report to the Internal Revenue Service the amount of designated Roth contributions via applicable IRS reporting forms. This will enable you to determine and document the nontaxable amount of future distributions.

b) Rollover into an eligible employer plan. For this purpose, an eligible employer plan is a plan qualified under section 401(a), a section 403(a) annuity plan, or a section 403(b) tax-sheltered annuity, provided the receiving plan provides separate accounting for the amounts rolled over, including separate accounting for the designated Roth contributions and any earnings thereon. You CANNOT roll over designated Roth contributions to a governmental 457 plan. If you intend to roll over your designated Roth account to an employer plan that accepts these rollovers, you CANNOT have the designated Roth account paid to you first (an indirect or 60-day rollover); instead, you must instruct the Plan Administrator to make a direct rollover on your behalf. Also, as indicated in (a) above, you CANNOT roll over your designated Roth account to a Roth IRA and then subsequently roll that amount into an employer plan. You may rollover designated Roth accounts between your 401(a) and 403(b) plans, provided separate accounting for the designated Roth account is done in the receiving plan.

To help ensure the proper tax treatment of your designated Roth account, your Plan Administrator must provide the plan administrator of the recipient plan with either (i) a statement indicating the first year of the 5-taxable-year period of the designated Roth account, as well as the amount of basis, or (ii) a statement that the distribution is a qualified distribution. The statement must be provided within a reasonable period but no later than 30 days following the direct rollover or your request.

<u>After-tax Contributions.</u> If you made after-tax contributions to the Plan, these contributions may be rolled into either a traditional IRA or to certain employer plans that accept rollovers of the after-tax contributions. The following rules apply:

a) Rollover into a Traditional IRA. You can roll over your after-tax contributions to a traditional IRA either directly or indirectly. Your Plan Administrator should be able to tell you how much of your payment is the taxable portion and how much is the after-tax portion.

If you roll over after-tax contributions to a traditional IRA, it is your responsibility to keep track of, and report to the Internal Revenue Service on the applicable forms, the amount of these after-tax contributions. This will enable the nontaxable amount of any future distributions from the traditional IRA to be determined.

Once you roll over your after-tax contributions to a traditional IRA, those amounts CANNOT later be rolled over to an employer plan.

b) Rollover into an Employer Plan. You can roll over after-tax contributions from an employer plan that is qualified under section 401(a), a section 403(a) annuity plan, or a 403(b) plan, to another such plan using a direct rollover if the other plan provides separate accounting for amounts rolled over, including separate accounting for the after-tax employee contributions and earnings on those contributions. You can also roll over after-tax contributions from a section 403(b) tax-sheltered annuity to another section 403(b) tax-sheltered annuity using a direct rollover if the other tax-sheltered annuity provides separate accounting for amounts rolled over, including separate accounting for the after-tax employee contributions and earnings on those contributions. You CANNOT roll over after-tax contributions to a governmental 457 plan. If you want to roll over your after-tax contributions to an employer plan that accepts these rollovers, you cannot have the after-tax contributions paid to you first. You must instruct the Plan Administrator of this Plan to make a direct rollover on your behalf. Also, you cannot first roll over after-tax contributions to a traditional IRA and then roll over that amount into an employer plan.

The following types of payments <u>cannot</u> be rolled over:

<u>Payments Spread over Long Periods.</u> You cannot roll over a payment if it is part of a series of equal (or almost equal) payments that are made at least once a year and that will last for:

- your lifetime (or a period measured by your life expectancy), or

- your lifetime and your beneficiary's lifetime (or a period measured by your joint life expectancies), or

- a period of 10 years or more.

<u>Required Minimum Payments.</u> Beginning when you reach age 70½ or retire, whichever is later, a certain portion of your payment cannot be rolled over because it is a "required minimum payment" that must be paid to you. Special rules apply if you own more than 5% of your employer.

<u>Hardship Distributions.</u> A hardship distribution cannot be rolled over.

<u>ESOP Dividends.</u> Cash dividends paid to you on employer stock held in an employee stock ownership plan cannot be rolled over.

<u>Corrective Distributions.</u> A distribution that is made to correct a failed nondiscrimination test or because legal limits on certain contributions were exceeded cannot be rolled over.

<u>Loans Treated as Distributions.</u> The amount of a plan loan that becomes a taxable deemed distribution because of a default cannot be rolled over. However, a loan offset amount is eligible for rollover, as discussed in Part III below. Ask the Plan Administrator of this Plan if distribution of your loan qualifies for rollover treatment.

The Plan Administrator of this Plan should be able to tell you if your payment includes amounts which cannot be rolled over.

## II. <u>DIRECT ROLLOVER</u>

A DIRECT ROLLOVER is a direct payment of an amount of your Plan benefits to an IRA or an eligible employer plan that will accept it. You can choose a DIRECT ROLLOVER of all or any portion of your payment that is an eligible rollover distribution, as described in Part I above. You are not taxed on any taxable portion of your payment for which you choose a DIRECT ROLLOVER until you later take it out of the IRA or eligible employer plan, except with regard to amounts other than your designated Roth account which are directly rolled over to a Roth IRA (as available beginning on January 1, 2008). In addition, no income tax withholding is required for any taxable portion of your Plan benefits for which you choose a DIRECT ROLLOVER. This Plan might not let you choose a DIRECT ROLLOVER if your distributions for the year are less than $200.

DIRECT ROLLOVER to a Traditional or Roth IRA. You can open a traditional IRA to receive the direct rollover of amounts other than a designated Roth account. You can open a Roth IRA to receive the direct rollover of any designated Roth account. If you choose to have your payment made directly to a traditional or Roth IRA, contact an IRA sponsor (usually a financial institution) to find out how to have your payment made in a direct rollover to a traditional or Roth IRA at that institution. If you are unsure of how to invest your money, you can temporarily establish an IRA to receive the payment. However, in choosing an IRA, you may wish to make sure that the IRA you choose will allow you to move all or a part of your payment to another IRA at a later date, without penalties or other limitations. See IRS Publication 590, Individual Retirement Arrangements, for more information on IRAs (including limits on how often you can roll over between IRAs). Also, beginning on January 1, 2008, you may directly roll over amounts other than your designated Roth account to a Roth IRA with similar tax consequences as converting a traditional IRA to a Roth IRA (please consult with a tax professional before initiating such a rollover).

DIRECT ROLLOVER to a Plan. If you are employed by a new employer that has an eligible employer plan, and you want a direct rollover to that plan, ask the plan administrator of that plan whether it will accept your rollover. An eligible employer plan is not legally required to accept a rollover. Even if your new employer's plan does not accept a rollover, you can choose a DIRECT ROLLOVER to an IRA as described above. If the employer plan accepts your rollover, the plan may provide restrictions on the circumstances under which you may later receive a distribution of the rollover amount or may require spousal consent to any subsequent distribution. Check with the plan administrator of that plan before making your decision.

DIRECT ROLLOVER of a Series of Payments. If you receive a payment that can be rolled over to a traditional IRA, Roth IRA, or an eligible employer plan that will accept it, and it is paid in a series of payments for less than 10 years or is not a series of payments as described in Part I, your choice to make or not make a DIRECT ROLLOVER for a payment will apply to all later payments in the series until you change your election. You are free to change your election for any later payment in the series.

Change in Tax Treatment Resulting from a DIRECT ROLLOVER. The tax treatment of any payment from the eligible employer plan or IRA receiving your DIRECT ROLLOVER might be different than if you received your benefit in a taxable distribution directly from the Plan. For example, if you were born before January 1, 1936, you might be entitled to ten-year averaging or capital gain treatment, as explained below. However, if you have your benefit rolled over to a section 403(b) tax-sheltered annuity, a governmental 457 plan, or an IRA in a DIRECT ROLLOVER, your benefit will no longer be eligible for that special treatment. See the information below entitled "Additional 10% Tax if You Are under Age 59½" and "Special Tax Treatment if You Were Born before January 1, 1936."

## III. PAYMENT PAID TO YOU

If your payment can be rolled over (see Part I above) and the payment is made to you in cash, it is subject to 20% federal income tax withholding on the taxable portion (state tax withholding may also apply). The payment is taxed in the year you receive it unless, within 60 days, you roll it over to an IRA or an eligible employer plan that accepts rollovers. If you do not roll it over, special tax rules may apply.

Income Tax Withholding:

Mandatory Withholding. If any portion of your payment can be rolled over under Part I above and you do not elect to make a DIRECT ROLLOVER, the Plan is required by law to withhold 20% of the taxable amount. This amount is sent to the IRS as federal income tax withholding. For example, if you can roll over a taxable payment of $10,000, only $8,000 will be paid to you because the Plan must withhold $2,000 as income tax. However, when you prepare your income tax return for the year, unless you make a rollover within 60 days (see "Sixty-Day Rollover Option" below), you must report the full $10,000 as a taxable payment from the Plan. You must report the $2,000 as tax withheld, and it will be credited against any income tax you owe for the year.

Voluntary Withholding. If any portion of your payment is taxable but cannot be rolled over under Part I above, the mandatory withholding rules described above do not apply. In this case, you may elect not to have withholding apply to that portion. If you do nothing, an amount will be taken out of this portion of your payment for federal income tax withholding. To elect out of withholding, ask the Plan Administrator for the election form and related information.

<u>Sixty-Day Rollover Option.</u> If you receive a payment that can be rolled over under Part I above, you can still decide to roll over all or part of it to an IRA or to an eligible employer plan that accepts rollovers. If you decide to roll over, <u>you must contribute the amount of the payment you received to an IRA or, with the exception of a distribution of after-tax amounts or designated Roth accounts, to an eligible employer plan within 60 days after you receive the payment</u>. The portion of your payment that is rolled over will not be taxed until you take it out of the traditional IRA, Roth IRA, or the eligible employer plan.

You can roll over up to 100% of your payment that can be rolled over under Part I above, including an amount equal to the 20% of the taxable portion that was withheld. If you choose to roll over 100%, you must find other money within the 60-day period to contribute to the IRA or the eligible employer plan, to replace the 20% that was withheld. On the other hand, if you roll over only the 80% of the taxable portion that you received, you will be taxed on the 20% that was withheld.

> <u>Example:</u> The taxable portion of your payment that can be rolled over under Part I above is $10,000, and you choose to have it paid to you. You will receive $8,000, and $2,000 will be sent to the IRS as income tax withholding. Within 60 days after receiving the $8,000, you may roll over the entire $10,000 to a traditional IRA or an eligible employer plan. To do this, you roll over the $8,000 you received from the Plan, and you will have to find $2,000 from other sources (your savings, a loan, etc.). In this case, the entire $10,000 is not taxed until you take it out of the traditional IRA or an eligible employer plan. If you roll over the entire $10,000, when you file your income tax return you may get a refund of part or all of the $2,000 withheld.
>
> If, on the other hand, you roll over only $8,000, the $2,000 you did not roll over is taxed in the year it was withheld. When you file your income tax return, you may get a refund of part of the $2,000 withheld. (However, any refund is likely to be larger if you roll over the entire $10,000.)

<u>Additional 10% Tax If You Are under Age 59½.</u> If you receive a payment before you reach age 59½ and you do not roll it over, then, in addition to the regular income tax, you may have to pay an extra tax equal to 10% of the taxable portion of the payment. The additional 10% tax generally does not apply to (1) payments that are paid after you separate from service with your employer during or after the year you reach age 55 (for qualified public safety employees in governmental plans, the year you reach age 50), (2) payments that are paid because you retire due to disability, (3) payments that are paid as equal (or almost equal) payments over your life or life expectancy (or your and your beneficiary's lives or life expectancies), (4) dividends paid with respect to stock by an employee stock ownership plan (ESOP) as described in Code section 404(k), (5) payments that are paid directly to the government to satisfy a federal tax levy, (6) payments that are paid to an alternate payee under a qualified domestic relations order, (7) payments that do not exceed the amount of your deductible medical expenses or (8) qualified reservist distributions. See IRS Form 5329 for more information on the additional 10% tax.

The additional 10% tax will not apply to distributions from a governmental 457 plan, except to the extent the distribution is attributable to an amount you rolled over to that plan (adjusted for investment returns) from another type of eligible employer plan or IRA. Any amount rolled over from a governmental 457 plan to another type of eligible employer plan or to a traditional IRA will become subject to the additional 10% tax if it is distributed to you before you reach age 59½, unless one of the exceptions applies.

<u>Qualified Distributions from a designated Roth account.</u> Distributions from a designated Roth account which are made on or after the later of the date in which you attain age 59½, die or become disabled AND after the completion of the 5-taxable-year period are not included in your income for Federal tax purposes. The 5-taxable-year period begins on the first day of the first taxable year in which you first made a designated Roth deferral to the plan or, if applicable, a prior plan. Note: generally, each plan in which you participate will have a separately determined 5-taxable-year period.

<u>Special Tax Treatment If You Were Born before January 1, 1936.</u> If you receive a payment from a plan qualified under section 401(a) or a section 403(a) annuity plan that can be rolled over under Part I and you do not roll it over to a traditional IRA or an eligible employer plan, the payment will be taxed in the year you receive it. However, if the payment qualifies as a "lump sum distribution," it may be eligible for special tax treatment. (See also "Employer Stock or Securities", below.) A lump sum distribution is a payment, within one year, of your entire balance under the Plan (and certain other similar plans of the employer) that is payable to you after you have reached age 59½ or because you have separated from service with your employer (or, in the case of a self-employed individual, after you have reached age 59½ or have become disabled). For a payment to be treated as a lump sum distribution, you must have been a participant in the plan for at least five years before the year in which you received the distribution. The special tax treatment for lump sum distributions that may be available to you is described below.

> <u>Ten-Year Averaging.</u> If you receive a lump sum distribution and you were born before January 1, 1936, you can make a one-time election to figure the tax on the payment by using "10-year averaging" (using 1986 tax rates). Ten-year averaging often reduces the tax you owe.
>
> <u>Capital Gain Treatment.</u> If you receive a lump sum distribution and you were born before January 1, 1936, and you were a participant in the Plan before 1974, you may elect to have the part of your payment that is attributable to your pre-1974 participation in the Plan taxed as long-term capital gain at a rate of 20%.

There are other limits on the special tax treatment for lump sum distributions. For example, you can generally elect this special tax treatment only once in your lifetime, and the election applies to all lump sum distributions that you receive in that same year. You may not elect this special tax treatment if you rolled amounts into this Plan from a 403(b) tax-sheltered annuity contract, a governmental 457 plan, or from an IRA not originally attributable to a qualified employer plan. If you have previously rolled over a distribution from this Plan (or certain other similar plans of the employer), you cannot use this special averaging treatment for later payments from the Plan. If you roll over your payment to an IRA, governmental 457 plan, or 403(b) tax-sheltered annuity, you will not be able to use special tax treatment for later payments from that IRA, plan, or annuity. Also, if you roll over only a portion of your payment to an IRA, governmental 457 plan, or 403(b) tax-sheltered annuity, this special tax treatment is not available for the rest of the payment. See IRS Form 4972 for additional information on lump sum distributions and how you elect the special tax treatment.

Employer Stock or Securities. There is a special rule for a payment from the Plan that includes employer stock (or other employer securities). To use this special rule, 1) the payment must qualify as a lump sum distribution, as described above, except that you do not need five years of plan participation, or 2) the employer stock included in the payment must be attributable to "after-tax" employee contributions, if any. Under this special rule, you may have the option of not paying tax on the "net unrealized appreciation" of the stock until you sell the stock. Net unrealized appreciation generally is the increase in the value of the employer stock while it was held by the Plan. For example, if employer stock was contributed to your Plan account when the stock was worth $1,000 but the stock was worth $1,200 when you received it, you would not have to pay tax on the $200 increase in value until you later sold the stock.

You may instead elect not to have the special rule apply to the net unrealized appreciation. In this case, your net unrealized appreciation will be taxed in the year you receive the stock, unless you roll over the stock. The stock can be rolled over to a an IRA (if the IRA provider permits), or another eligible employer plan, either in a direct rollover or (with the exception of a rollover of after-tax contributions or a designated Roth account to another employer plan) a rollover that you make yourself. Generally, you will no longer be able to use the special rule for net unrealized appreciation if you roll the stock over to an IRA or another eligible employer plan.

If you receive only employer stock in a payment that can be rolled over, no amount will be withheld from the payment. If you receive cash or property other than employer stock, as well as employer stock, in a payment that can be rolled over, the 20% withholding amount will be based on the entire taxable amount paid to you (including the value of the employer stock determined by excluding the net unrealized appreciation). However, the amount withheld will be limited to the cash or property (excluding employer stock) paid to you.

If you receive employer stock in a payment that qualifies as a lump sum distribution, the special tax treatment for lump sum distributions described above (such as 10-year averaging) also may apply. See IRS Form 4972 for additional information on these rules.

Repayment of Plan Loans. If your employment ends and you have an outstanding loan from your Plan, your employer may reduce (or "offset") your balance in the Plan by the amount of the loan you have not repaid. The amount of your loan offset is treated as a distribution to you at the time of the offset and will be taxed, if otherwise taxable, unless you roll over an amount equal to the amount of your loan offset to another employer plan or an IRA within 60 days of the date of the offset. If the amount of your loan offset is the only amount you receive or are treated as having received, no amount will be withheld from it. If you receive other payments of cash or property from the Plan, the 20% withholding amount will be based on the entire taxable amount paid to you, including the amount of the loan offset. The amount withheld will be limited to the amount of other cash or property paid to you (other than any employer securities). The amount of a defaulted plan loan that is a taxable deemed distribution cannot be rolled over.

## IV. SURVIVING SPOUSES, ALTERNATE PAYEES & OTHER BENEFICIARIES

In general, the rules summarized above that apply to payments to employees also apply to payments to surviving spouses of employees and to spouses or former spouses who are "alternate payees." You are an alternate payee if your interest in the Plan results from a "qualified domestic relations order", which is an order issued by a court, usually in connection with a divorce or legal separation.

If you are a surviving spouse or an alternate payee, you may choose to have a payment that can be rolled over, as described in Part I above, paid in a DIRECT ROLLOVER to an IRA or to an eligible employer plan or paid to you. If you have the payment paid to you, you can keep it or roll it over yourself to an IRA or to an eligible employer plan. Thus, you have the same choices as the employee.

If you are a beneficiary other than a surviving spouse, you may choose a direct rollover to an IRA which will be treated as an "inherited IRA." You cannot roll over the payment yourself. You must instruct the Plan Administrator of the distributing plan to make a direct rollover to an "inherited IRA" that you have established on your behalf. You will be required to receive annual payments from the IRA in accordance with IRS regulations. See IRS Publication 590, Individual Retirement Arrangements, for more information. If you are a designated beneficiary other than a surviving spouse and you do not choose a direct rollover to an IRA, the taxable portion of your payment will be taxed in the current year and federal income tax will be withheld to the extent required.

If you are a surviving spouse, an alternate payee, or another beneficiary, your payment is generally not subject to the additional 10% tax described in Part III above, even if you are younger than age 59½.

If you are a surviving spouse, an alternate payee, or another beneficiary, you may be able to use the special tax treatment for lump sum distributions and the special rule for payments that include employer stock, as described in Part III above. If you receive a payment because of the employee's death, you may be able to treat the payment as a lump sum distribution if the employee met the appropriate age requirements, whether or not the employee had 5 years of participation in the Plan.

### HOW TO OBTAIN ADDITIONAL INFORMATION

This notice summarizes only the federal (not state or local) tax rules that might apply to your payment. The rules described above are complex and contain many conditions and exceptions that are not included in this notice. In particular, additional guidance regarding rolling over assets from designated Roth accounts in plans is expected from the IRS. Therefore, you may want to consult with the Plan Administrator or a professional tax advisor before you take a payment of your benefits from your Plan. Also, you can find more specific information on the tax treatment of payments from qualified employer plans in IRS Publication 575, Pension and Annuity Income, and IRS Publication 590, Individual Retirement Arrangements. These publications are available from your local IRS office, on the IRS's Internet Web Site at www.irs.gov, or by calling 1-800-TAX-FORMS.

Fidelity Investments Institutional Operations Company, Inc., 82 Devonshire St., Boston, MA 01209

451098.1

# **G** r o u p

# **L** i f e

# **C** o n v e r s i o n



**Lincoln**
**Financial Group®**

Lincoln Financial Group is the marketing name for Lincoln National
Corporation and its affiliates.

GLA-04115                                         10/08 Rev

# Conversion of Group Term Life Insurance To An Individual Life Insurance Policy On Termination of Employment

## Important

The group Policy provides that all requirements for conversion must be made within 31 days after the date your Group insurance terminates.

## 1. What is The Group Life Conversion Privilege?

If your Group Life insurance terminates because of termination of employment while the Group Policy is still in force, you have the right to convert your group term life insurance to a universal life insurance policy. Your right to convert is subject to the conditions set forth in your Group certificate. A medical examination or other evidence of good health is not required.

## 2. When Must I Apply For Conversion Of My Group Life Insurance?

You must apply for conversion within the 31-day period immediately following termination of your employment. During the 31-day period, your life insurance under your Group certificate will remain in force, without additional cost, whether or not you have made application to convert.

## 3. How May I Obtain An Individual Policy?

You may obtain a universal life insurance policy by making written application and paying the first premium for the individual policy within the 31-day period immediately following the termination of your employment. An application form for conversion may be obtained from your employer. Please have your employer complete Section A.

## 4. How Much Individual Life Insurance May I Obtain On Conversion?

You may obtain universal life insurance in an amount up to the amount of your group term life insurance under your Group certificate at termination of your employment.

## 5. What Policies Of Individual Life Insurance Are Available on Conversion?

You may convert to any universal life insurance policy customarily being issued by Lincoln Financial Group at the time of conversion.

## 6. What will The Premium Be?

**Please call 1-800-423-2765 for quotes.**

The premium for the universal life insurance policy will be in accordance with the established premium rates at the time of conversion for the plan elected and will depend on (a) the amount of the individual life insurance policy (b) the class of risk to which you belong, (c) your sex, and (d) your insurance age.

"Class of risk" for group conversion relates to occupation, military hazard, aviation activities, foreign residence or travel, etc., but does not relate to state of health.

"Insurance Age" means age nearest birthday on the effective date of the universal life insurance policy (i.e. your age on the birthday which is within six months of the effective date.)

## Important

The minimum direct payment is $50.00. You must elect a pay mode that is $50.00 or over.

**The Lincoln National Life Insurance Company**
**Specialty Service Dept.**
**P.O. Box 2616**
**Omaha, Nebraska 68103-2616**

**Web site: www.LincolnFinancial.com**



**Lincoln**
Financial Group®

The Lincoln National Life Insurance Company, PO Box 21008, Greensboro, NC 27420-1008
(hereinafter referred to as "the Company")
Mail this completed form to: The Lincoln National Life Insurance Company, PO Box 2616, Omaha, NE 68103-2616

# APPLICATION FOR CONVERSION OF GROUP LIFE INSURANCE

**A. EMPLOYER:** Please complete all of Section A, date and sign form to help us process the application quickly. We must receive this form within 31 days of "Date Employment Terminated" as shown on this form.

1. Group Policy Name: _____

Proposed Insured Information: 2. Name: _____   3. Birthdate: _____   4. Social Security Number: _____

5. Date of Hire: _____   6. Date Group Insurance Terminated: _____

7. Date Employment Terminated: _____   8. Date Last Worked: _____

9. Amount of Current Insurance Available:   a. Amount $ _____   b. Plan _____   c. Class _____

10. Reason for termination of group life coverage:
☐ Retirement   ☐ Disabled   ☐ Age Reduction   ☐ Group Policy Terminated
☐ Other, please explain _____

GENERAL. Once this information is received, a letter will be sent directly to the Proposed Insured. The Lincoln National Life Insurance Company will calculate the premium amount and effective date of the Conversion Policy and notify the Proposed Insured at that time.

Date Signed _____   Signature of Administrator _____

Administrator Phone Number _____   Administrator Fax Number _____

**B. EMPLOYEE:** Please complete all of Section B, date and sign form to help us process your application quickly. We must receive this form within 31 days of "Date Employment Terminated" as shown on this form.

Proposed Insured Information:

1. Present Occupation: _____

2. Name: _____

3. Address (Street, City, State, Zip Code): _____

4. Phone Number: _____

5. Age: _____   6. Sex: _____   7. Insurance Amount applied for: $_____

8. Premium payable (check one)   a. ☐ Annual   b. ☐ Semi-Annual   c. ☐ Quarterly   d. ☐ Bank Draft

**Beneficiary Information. (If naming more than one Primary or Contingent Beneficiary, please attach a separate sheet of paper.)**

9. Primary Beneficiary: _____   a. Relationship: _____

b. Social Security Number: _____

10. Contingent Beneficiary: _____   a. Relationship: _____

b. Social Security Number: _____

11. Is Proposed Insured covered by or eligible for any other Group Insurance, other than The Lincoln National Life Insurance Company? ☐ Yes ☐ No  If yes, for how much? _____

12. Does the Proposed Insured use tobacco products now or in the past twelve months?
☐ Yes ☐ No

13. In the past 3 years, has the Proposed Insured engaged in, or in the future does the Proposed Insured plan to engage in, flying in non-commercial aircraft? ☐ Yes ☐ No  If yes, give details _____

| Complete this Section if the Proposed Insured is not the Owner/Premium Payor: |
|---|
| 14. Full Name of Owner/Premium Payor: _____ |
| 15. Address of Owner/Premium Payor: (Street, City, State, Zip Code) _____ |
| 16. Relationship to Proposed Insured: _____ |

GENERAL. To the best of my knowledge and belief, the answers given above are true and complete. I agree that: (a) this application, a copy of which will be attached to the policy when issued, will be a part of the policy; (b) by acceptance of any policy issued on the life of the Proposed Insured, all rights under the Group Policy for such person are relinquished; and (c) only an officer of the Company can make or alter a contract of insurance or bind the Company in any way.

Under penalties of perjury, I, the Owner, (if other than the Proposed Insured) declare that the Social Security Number shown is correct and that the Internal Revenue Service has not notified me that I am subject to back-up withholding for failing to properly report dividend or interest income.

WHEN INSURANCE TAKES EFFECT. The Insurance applied for on any person to be insured will not take effect unless the first premium is paid during the lifetime of the Proposed Insured and during the 31 days following the date group coverage terminated. Insurance will take effect at the end of the 31 day period following the date group coverage terminated.

Date Signed _____   Signature of Proposed Insured _____

State Where Signed _____   Signature of Owner/Premium Payor _____

COMMENTS: _____

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

GJF-03753


**Lincoln** Financial Group®

**\*\*MAIL THIS COMPLETED FORM WITH YOUR PREMIUM AND BILLING CHARGE PAYMENT TO:**
The Lincoln National Life Insurance Company, P.O. Box 0821, Carol Stream, IL 60132-0821

## APPLICATION FOR PORTABILITY

**TO AVOID DELAY OF BENEFITS, PLEASE COMPLETE ALL QUESTIONS.**

**Employer:** Please complete and sign the upper section of this form. Please give the form to the employee to complete the lower section.

**Employee:** Please complete and sign the lower section of this form. Return the completed form with the premium due PLUS the billing charge to the address shown on the top\*\* of this form. We must receive this form & payment within 31 days of "Date Employment Terminated."

### This section to be completed by EMPLOYER

Group Name: _____ Group Policy Number: _____ Group ID: _____

**Employee Information:**

Employee Name: _____ Birthdate: ___ / ___ / ___ Social Security #: ___ - ___ - ___

Address (Street, City, State, Zip Code): _____

Phone Number: ( ___ ) _____ Gender: ☐ Male ☐ Female

**Spouse Information: (Complete ONLY if Insured)**

Spouse's Name: _____ Birthdate: _____ Social Security #: ___ - ___ - ___

| Coverage Eligible to Port | | Coverage Amount | Monthly Premium Amount* | Initial Effective Date | Termination Date | Prior Carrier Effective Date |
|---|---|---|---|---|---|---|
| Voluntary Employee Life/AD&D | ☐ $ _____ | | $ _____ | _____ | _____ | _____ |
| Voluntary Spouse Life/AD&D | ☐ $ _____ | | $ _____ | _____ | _____ | _____ |
| Voluntary Dependent Life | ☐ $ _____ | | $ _____ | _____ | _____ | _____ |
| Voluntary LTD | ☐ $ _____ | | $ _____ | _____ | _____ | _____ |
| STD | ☐ $ _____ | | $ _____ | _____ | _____ | _____ |

Date Last Worked: _____ Date Premium Paid To: _____

**\*Use current group rates to calculate Monthly Premium Amount.**

**Reason for Termination of Employment (Check ALL that apply)**
☐ Retirement (voluntary termination of employment initiated by employee by meeting age, length of service and/or any other criteria for retirement from the organization)
☐ Unable to perform each of the main duties of *any* occupation due to sickness or injury.
☐ Resignation (voluntary termination of employment initiated by employee)
☐ Dismissal (involuntary termination of employment initiated by employer)
☐ Other, please explain _____

**Employer's Signature** _____ Printed Name _____ Date _____

Company Phone Number: ( ___ ) _____ Group Fax #: _____

### This section to be completed by EMPLOYEE

Beneficiary Information (Life/AD&D Insurance). If naming more than one Primary or Contingent Beneficiary, please attach a separate sheet of paper.

Employee's Primary Beneficiary: _____ Employee's Contingent Beneficiary: _____

Relationship: _____ Relationship: _____

Beneficiary's Address: _____ Contingent Beneficiary's Address: _____

Employee's quarterly premium: $ _____ + $5.00 Billing Fee\*\* = Total Amount Enclosed: $ _____
(Monthly premium x 3)

Spouse's quarterly premium: $ _____ + $5.00 Billing Fee\*\* = Total Amount Enclosed: $ _____
(Monthly premium x 3)

Child(ren)'s quarterly premium: $ _____ (No Billing Fee) = Total Amount Enclosed: $ _____
(Monthly premium x 3)

I hereby authorize The Lincoln National Life Insurance Company to begin billing directly for my: (check all applicable coverages)
☐ Voluntary Employee Life ☐ Voluntary Employee Life and AD&D ☐ Voluntary Dependent Life
☐ Voluntary Spouse Life ☐ Voluntary Spouse Life and AD&D ☐ Voluntary LTD

Signature of Insured Employee: _____ Date: _____

Signature of Insured Spouse: _____ Date: _____

Employee e-mail address: _____
If e-mail address supplied, we will contact you through email. **Did you remember to include your payment?**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLA-03727

Page 1 of 1
3/09

## EMPLOYEE APPLICATION FOR CONVERSION OF
## GROUP LONG TERM DISABILITY INSURANCE

1.  Name _____
    _____(Last)_____(Full First)_____(Middle)_____

2.  Sex: _____ Male _____ Female       3.   Social Security No. _____

4.  Birthdate: Month_____ Day_____ Year_____   Home Phone No. _____

5.  Home Address (Street & No.) _____

    City _____ State _____ Zip Code _____

6.  Application is being made according to the conversion privilege contained in Group Policy No._____
    Issued to _____
    (Group Policyholder or Participating Employer) by The Lincoln National Life Insurance Company.

7.  Occupation _____

8.  Reason for requesting conversion:

    _____ You terminated employment on _____

    _____ Other (explain): _____

9.  Your basic monthly earnings in effect just prior to your termination date:  $_____
    (NOTE: Show Basic Monthly Earnings as defined by the former plan, exclusive of overtime, bonus and other
    extra pay.)

10. Are you covered  or eligible for any other Group Long Term Disability insurance, other than The Lincoln
    National Life Insurance Company plan shown in part 6 above? _____ Yes _____ No   (NOTE:  Your
    application will be declined if you become eligible for other group LTD coverage within 31 days after The
    Lincoln National Life Insurance Company coverage ends.)

11. Are you now disabled from a sickness or injury? _____Yes _____No  Are you retired? _____Yes _____No

12. This Conversion Policy provides 60% of your last basic monthly earnings not to exceed a maximum monthly
    benefit of $3,000, less other Income Benefits.  However, this benefit percentage and maximum monthly benefit
    may not exceed the similar benefit percentage and maximum monthly benefit which were applicable to you on
    your termination date under former plan, less Other Income Benefits.

13. Premium Mode:  Quarterly
    If you apply for insurance in the middle of a quarter your premium will be prorated.

The statements set forth above are true to the best of my knowledge and belief, and may be relied upon by the
Insurance Company in considering this application.  Further, my signature below acknowledges that I have received a
copy of my statements as they  appear on this application.


Signature of Applicant_____ Date_____

Signature of Witness_____ Date_____

Position and Title_____

Please forward the original of this Application and your first quarterly premium payment to The Lincoln National Life
Insurance Company, Group Insurance Service Office, P.O. Box 2616, Omaha Nebraska 68103-2616.

Your Insurance will not become effective until your employer has completed the EMPLOYER QUESTIONNAIRE and
you receive approval and an effective date for your Long Term Disability Conversion Insurance from The Lincoln
National Life Insurance Company.

          LRA _____ License #_____

GL3001-C-App.                                                        Rev. 04/07 (over)

┌─────────────────────────────────────────────────────────────────────────────────┐
│ For Group Insurance Service Office Use Only:                                       │
│                                                                                     │
│                                                                                     │
│                                                                                     │
└─────────────────────────────────────────────────────────────────────────────────┘

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services ("OIG-HHS") (collectively, "the United States"); Vantage Oncology, LLC ("Vantage"), for itself and on behalf of the other Vantage Entities, as that term is defined below, and Suleiman Refaei, ("Relator"), acting through their authorized representatives. Collectively, all of the above will be referred to as "the Parties."

## RECITALS

A.     Vantage Oncology, LLC is a Delaware limited liability company headquartered in Manhattan Beach, California. Vantage, by and through Vantage Oncology Treatment Centers, LLC, VEC GP, LLC, Valley Equipment Company, Vantage Medical Management Services, LLC, and Streator Radiation Oncology, LLC, (collectively, with Vantage, the "Vantage Entities"), has owned a majority stake in, managed and furnished billing and other services to a radiation oncology center in Spring Valley, Illinois since January 1, 2007, and a radiation oncology center in Streator, Illinois, since November 2007. These two Illinois centers are referred to throughout this Agreement as the "Centers." None of the Vantage Entities has served as the provider of medical items or services at either of the Centers.

B.     The Relator filed a qui tam action in the United States District Court for the Southern District of Ohio captioned United States ex rel. Suleiman Refaei v. Vantage Oncology, and Associates, Inc, et al., Case No. 10-CV-833, pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. §3730 (the "Civil Action"). The Relator alleged that Vantage submitted or caused the submission of false claims to Medicare for certain radiation oncology therapy services that were performed at the Centers without the required physician supervision, that

*Agreement by and between*
*the United States,*
*Refaei, and Vantage*

1



appeared to be medically unnecessary, upcoded, inappropriately administered, and/or improperly

documented. The United States partially intervened in the Civil Action for settlement purposes.

    C.    The United States contends that the Vantage Entities submitted or caused to be

submitted false claims for payment to the Medicare Program, Title XVIII of the Social Security

Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare") in connection with radiation oncology services

that were furnished at the Centers.

    D.    The United States contends that it has certain civil claims, as specified below,

against the Vantage Entities related to the provision of radiation oncology services at the

Centers during the period January 1, 2007 through June 30, 2012. Among other treatments,

certain Center patients received intensity modulated radiation therapy, which is a sophisticated

radiation treatment indicated for specific types of cancer where precision and supervision are

required to spare patients' surrounding organs or healthy tissue. The United States contends that

the Vantage Entities knowingly overbilled the Medicare program in the administration and

supervision of these radiation oncology services as follows (hereinafter, referred to as the

"Covered Conduct"):

    1.    Overbilling Medicare for simple simulations (Current Procedural

Terminology or CPT code 77280), complex simulations (CPT code 77290), 3D imaging (CPT

code 77295), simple treatment devices (CPT code 77332), complex treatment devices (CPT code

77334), continuing medical physics consults (CPT code 77336), special physics consults (CPT

code 77370), stereoscopic x-ray guidance for localization of target volume (CPT code 77421), on

treatment visits (CPT code 77427), and special treatment procedures (CPT code 77470) by

submitting claims without the documentation in the medical record necessary to show that the

service was properly performed;

*Agreement by and between*
*the United States,*
*Refaei, and Vantage*          2

     2.      Overbilling Medicare for special physicist consultations (CPT code 77370) by submitting duplicative or unnecessary claims that were already performed and paid in conjunction with other services;

     3.      Overbilling Medicare for simple simulations (CPT code 77280) and complex simulations (CPT code 77290) by submitting claims for therapy levels that were not supported in the medical record; and

     4.      Overbilling Medicare for image-guided radiation therapy (CPT code 77421) by submitting claims without support to show physician supervision.

     E.      This Agreement is made in compromise of disputed claims. This Agreement is neither an admission of facts or liability by the Vantage Entities, nor a concession by the United States that its claims are not well-founded.

     F.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

     1.      Subject to the terms and procedures set forth below, Vantage agrees to pay to the United States the principal amount of $2,085,000, plus accrued interest at the rate of 2.0% per annum from August 9, 2013, and continuing until and including the day of payment (the "Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of Ohio no later than 14 days after the Effective Date of this Agreement (as defined in Paragraph 25 of this Agreement).

*Agreement by and between*
*the United States,*
*Refaei, and Vantage*

     3

2.      Conditioned upon the United States receiving the Settlement Amount from Vantage and as soon as feasible after receipt, the United States shall pay, by electronic funds transfer, 17 percent of the Settlement Amount to Relator, pursuant to written instructions provided by Mark Byrne, Jacobs, Kleinman, Seibel, & McNally and Robert Newman, Newman & Meeks Co. LPA.

3.      The Vantage Entities shall pay $135,000 to counsel for Relator by electronic funds transfer pursuant to written instructions to be provided by Mark Byrne, Jacobs, Kleinman, Seibel, & McNally. The Vantage Entities agree to make this electronic funds transfer no later than fourteen (14) business days after the Effective Date of this Agreement.

4.      Subject to the exceptions in Paragraph 6 (concerning excluded claims), below, and conditioned upon full payment of the Settlement Amount by the Vantage Entities, the United States fully and finally releases the Vantage Entities, their predecessors and their current and former parent, subsidiary and affiliated companies, and all of their respective directors, officers, employees, representatives and agents from any civil or administrative monetary claims the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.      Subject to full payment of the Settlement Amount by the Vantage Entities pursuant to Paragraph 1 and of Relator's attorneys' fees, expenses and costs pursuant to Paragraph 3, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, agrees to dismiss with prejudice any currently pending claims against the Vantage Entities, their predecessors and their current and former parent, subsidiary and affiliated companies, and all of

their respective directors, officers, employees, representatives and agents and to fully and finally

release the Vantage Entities, their predecessors and their current and former parent, subsidiary

and affiliated companies, and all of their respective directors, officers, employees,

representatives and agents from any and all civil, administrative or any other claim whatsoever

(including claims for damages, fines and penalties, attorney's fees, costs, and expenses of every

kind and however denominated) that the Relator has asserted, could have asserted, or may assert

in the future against the Vantage Entities, their predecessors and their current and former parent,

subsidiary and affiliated companies, and all of their respective directors, officers, employees,

representatives and agents, including, but not limited to any claim under the False Claims Act, 31

U.S.C. §§ 3729-3733, including for the Covered Conduct, provided, however, that Relator does

not release the Vantage Entities for any claim for retaliation pursuant to 31 U.S.C. § 3730(h) or

attorney's fees specifically related to that claim.

    6.  Notwithstanding the releases given in paragraphs 4 and 5 of this

Agreement, or any other term of this Agreement, the following claims of the United States are

specifically reserved and are not released:

       a.  Any liability arising under Title 26, U.S. Code (Internal Revenue

Code);

       b.  Any criminal liability;

       c.  Except as explicitly stated in this Agreement, any administrative

liability, including mandatory or permissive exclusion from Federal health care programs;

       d.  Any liability to the United States (or its agencies) for any conduct

other than the Covered Conduct;

       e.  Any liability based upon obligations created by this Agreement;

f.  Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

h.  Any liability for failure to deliver goods or services due.

7.  Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8.  The Vantage Entities waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9.     The Vantage Entities fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Vantage Entities have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct, claims for which the Vantage Entities could have sought payment pursuant to CPT codes 77280, 77290, 77332, 77334, 77336, and 77427 (totaling approximately $70,189 from January 1, 2007 through December 31, 2012) for items and services performed at the Centers, and the United States' investigation and prosecution of the Civil Action or the Covered Conduct.

10.     The Vantage Entities fully and finally release the Relator, and his heirs, successors, agents, attorneys, and/or assigns from any claims (including attorney's fees, costs and expenses of every kind and however denominated) which the Vantage Entities asserted, could have asserted, or may assert in the future against Relator, his heirs, successors, agents, attorneys, and/or assigns related to the Civil Action, the Covered Conduct, or the United States or the Relator's investigation of the Civil Action or the Covered Conduct, except as they relate to Relator's claim for retaliation pursuant to 31 U.S.C. § 3730(h).

11.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and the Vantage Entities agree not to resubmit to any Medicare contractor any previously denied claims related to the Covered Conduct, and agree not to appeal any such denials of claims.

12.     The Vantage Entities agree to the following:

*Agreement by and between*                    7
*the United States,*
*Refaei, and Vantage*

a.  Unallowable Costs Defined: All costs (as defined in the Federal

Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the

Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the

regulations and official program directives promulgated thereunder) incurred by or on

behalf of the Vantage Entities, their present or former officers, directors, employees,

shareholders, and agents in connection with:

(1)  the matters covered by this Agreement;

(2)  the United States' audit(s) and civil investigation(s) of the

matters covered by this Agreement;

(3)  the Vantage Entities' investigation, defense, and corrective

actions undertaken in response to the United States' audit(s) and

civil investigation(s) in connection with the matters covered by this

Agreement (including attorney's fees);

(4)  the negotiation and performance of this Agreement; and

(5)  the payment the Vantage Entities make to the United States

pursuant to this Agreement and any payments that the Vantage

Entities may make to Relator, including costs and attorney's fees,

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and the Federal Employees Health Benefits Program

("FEHBP") (hereinafter referred to as "Unallowable Costs").

b.  Future Treatment of Unallowable Costs:  Unallowable Costs shall

be separately determined and accounted for by the Vantage  Entities, and the Vantage

Entities shall not charge such Unallowable Costs directly or indirectly to any contracts

with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by the Vantage Entities or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.      Treatment of Unallowable Costs Previously Submitted for Payment: the Vantage Entities further agree that within 90 calendar days of the Effective Date of this Agreement, they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by the Vantage Entities or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. The Vantage Entities agree that the United States, at a minimum, shall be entitled to recoup from them any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

      Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by the Vantage Entities or any of their subsidiaries or affiliates on the effect of

*Agreement by and between*
*the United States,*
*Refaei, and Vantage*
      9

inclusion of Unallowable Costs (as defined in this Paragraph) on the Vantage Entities or

any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.      Nothing in this Agreement shall constitute a waiver of the rights

of the United States to audit, examine, or re-examine the Vantage Entities' books and

records to determine that no Unallowable Costs have been claimed in accordance with

the provisions of this Paragraph.

      13.      The Vantage Entities agree to cooperate fully and truthfully with the

United States' investigation of individuals and entities involved in the Covered Conduct, but not

released in this Agreement. Upon reasonable notice, the Vantage Entities shall encourage, and

agree not to impair, the cooperation of their directors, officers, and employees, and shall use their

best efforts to make available, and encourage the cooperation of former directors, officers, and

employees for interviews and testimony, consistent with the rights and privileges of such

individuals. The Vantage Entities further agree to furnish to the United States, upon request,

complete and unredacted copies of all non-privileged documents, reports, memoranda of

interviews, and records in their possession, custody, or control concerning any investigation of

the Covered Conduct that they have undertaken, or that has been performed by another on their

behalf.

      14.      This Agreement is intended to be for the benefit of the Parties only. The

Parties do not release any claims against any other person or entity, except to the extent provided

for in Paragraphs 4 (United States Release of the Vantage Entities paragraph), 5 (Relator's

Release of the Vantage Entities paragraph), and 15 (waiver for beneficiaries paragraph), below.

      15.      The Vantage Entities waive and shall not seek payment for any of the

health care billings covered by this Agreement from any health care beneficiaries or their

*Agreement by and between*
*the United States,*
*Refaei, and Vantage*        10

parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16.     Upon receipt of the Settlement Amount, above, the United States and Relator shall file a Stipulation of Dismissal in the Civil Action, confirming the dismissal with prejudice of all claims as to the Covered Conduct subject to the terms and conditions of this Agreement, and dismissing all remaining claims in the Civil Action with prejudice to Relator and without prejudice to the United States, provided, however, that Relator's claim for retaliation pursuant to 31 U.S.C. § 3730(h) shall not be dismissed, unless it is settled, and the Court is so informed.

17.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

19.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Ohio.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20.     This Agreement constitutes the complete agreement between and among the Parties.  This Agreement may not be amended except by written consent of the Parties.

21.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

*Agreement by and between*          11
*the United States,*
*Refaei, and Vantage*

22.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23.     This Agreement is binding on the successors, transferees, heirs, and assigns of the Vantage Entities and of Relator.

24.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Emails that attach signatures in PDF shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 11/13/2013              BY: _Eva Gunasekera_
                              EVA U. GUNASEKERA
                              Trial Attorney
                              Email: Eva.Gunasekera@usdoj.gov
                              United States Department of Justice
                              Commercial Litigation Branch
                              Civil Division

                              Counsel for United States of America


DATED: _____          BY: _____
                              MARK T. D'ALESSANDRO
                              Civil Chief
                              ANDREW M. MALEK
                              Assistant United States Attorney
                              Email: Andrew.Malek@usdoj.gov
                              Office of the United States Attorney
                              for the Southern District of Ohio

                              Counsel for United States of America


DATED: _____          BY: _____
                              ROBERT K. DECONTI
                              Assistant Inspector General for Legal Affairs
                              Office of Counsel to the Inspector General
                              Office of Inspector General,
                              United States Department of
                              Health and Human Services


*Agreement by and between*           13
*the United States,*
*Refaei, and Vantage*

THE UNITED STATES OF AMERICA

DATED: _____      BY: _____
                                  EVA U. GUNASEKERA
                                  Trial Attorney
                                  Email: Eva.Gunasekera@usdoj.gov
                                  United States Department of Justice
                                  Commercial Litigation Branch
                                  Civil Division

                                  Counsel for United States of America


DATED: __11/4/13_____       BY: _____
                                  MARK T. D'ALESSANDRO
                                  Civil Chief
                                  ANDREW M. MALEK
                                  Assistant United States Attorney
                                  Email: Andrew.Malek@usdoj.gov
                                  Office of the United States Attorney
                                  for the Southern District of Ohio

                                  Counsel for United States of America


DATED: _____      BY: _____
                                  ROBERT K. DECONTI
                                  Assistant Inspector General for Legal Affairs
                                  Office of Counsel to the Inspector General
                                  Office of Inspector General,
                                  United States Department of
                                  Health and Human Services


*Agreement by and between*                13
*the United States,*
*Refaei, and Vantage*

THE UNITED STATES OF AMERICA


DATED: _____     BY: _____
                                      EVA U. GUNASEKERA
                                      Trial Attorney
                                      Email: Eva.Gunasekera@usdoj.gov
                                      United States Department of Justice
                                      Commercial Litigation Branch
                                      Civil Division

                                      Counsel for United States of America



DATED: _____     BY: _____
                                      MARK T. D'ALESSANDRO
                                      Civil Chief
                                      ANDREW M. MALEK
                                      Assistant United States Attorney
                                      Email: Andrew.Malek@usdoj.gov
                                      Office of the United States Attorney
                                      for the Southern District of Ohio

                                      Counsel for United States of America



DATED: 11/8/13 _____   BY: _____
                                      ROBERT K. DECONTI
                                      Assistant Inspector General for Legal Affairs
                                      Office of Counsel to the Inspector General
                                      Office of Inspector General,
                                      United States Department of
                                      Health and Human Services


*Agreement by and between*                    13
*the United States,*
*Refaei, and Vantage*

**VANTAGE ONCOLOGY, LLC (on behalf of itself and the other Vantage Entities)**

DATED: _11/8/2013 6:00_     BY: _____

STEVEN UDICIAUS
[printed name of Vantage Signatory]

VICE PRESIDENT & GENERAL COUNSEL
Title

DATED: _11/11/2013_     BY: _____

GAD WEINREICH
RAMY FAYED
SEAN CENAWOOD
Dentons US LLP

Counsel for Vantage Oncology, LLC and the other
Vantage Entities

*Agreement by and between*       14
*the United States,*
*Refaei, and Vantage*

SULEIMAN REFAEI

DATED: Nov 5, 2013                    BY: _____
                                          SULEIMAN REFAEI


DATED: 11/5/13                        BY: _____
                                          MARK BYRNE
                                          Jacobs, Kleinman, Seibel & McNally

                                          Counsel for Suleiman Refaei

81004187V-2

*Agreement by and between*                    15
*the United States,*
*Refaei, and Vantage*